UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHELLE SHERRILL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-276
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 20).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in September 2009, alleging disability since October 1, 2007, due to back problems, heart problems, depression, and anxiety. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) Kristen King. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On October 24, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

2

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2012.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since October 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe combination of impairments: bipolar disorder, depression, anxiety, degenerative joint/disc disease of the lumbar spine, obesity, diabetes, hypertension[,] gastrointestinal reflux disease, sleep apnea, asthma, chronic obstructive pulmonary disease, and a history of urinary incontinence (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically when considered under Listings 1.02, 1.04, 12.04, 12.06, and 12.08 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Additionally, when considered in conjunction with her other impairments, the [plaintiff]'s obesity does not satisfy the requirements of any listed impairment.
>
> 5. After careful consideration of the entire record, I find that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), frequently lifting and/or carrying 10 pounds; occasionally lifting and/or carrying 20 pounds; standing/walking, each for about 6 hours in an 8-hour workday; and sitting for at least 2 hours in an 8-hour workday; and limited to frequent pushing and pulling; only occasional use of foot controls; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing of ropes, ladders, or scaffolds; no concentrated exposure to excessive vibration; no concentrated exposure to

environmental irritants such as fumes, odors, dusts, and gases; and no exposure to work at unprotected heights or around dangerous, moving machinery. She also requires a readily accessible bathroom facility. She is also limited to simple, routine, and repetitive tasks, with only occasional changes in the work setting.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1966 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 1, 2007, through the date of this decision (20 C.F.R. 404.1520(g)) and 416.920(g)).

(Tr. 20-31).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1] Plaintiff's past relevant work was as a retail cashier and home health aid. (Tr. 42, 63).
[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform unskilled, light work, citing as examples jobs as a small products assembler, garment sorter, and survey worker clerk. (Tr. 31, 64-65).

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 544-46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ failed to explain her Listings determinations; (2) the ALJ's residual functional capacity (RFC) formulation is not supported by substantial evidence because the ALJ mischaracterized the record evidence regarding plaintiff's urinary incontinence and disregarded evidence from her treating physician; and (3) the ALJ improperly discounted plaintiff's credibility. (Doc. 12 at 10-20). For the reasons that follow, the

undersigned finds that the ALJ's decision should be reversed and remanded for further proceedings.

1. Whether the ALJ failed to adequately explain her Listings determinations.

For her first assignment of error, plaintiff argues the ALJ erred at Step Three of the sequential analysis by failing to explain the "how and why" of her Listings determination. Specifically, plaintiff asserts that remand is necessary because the ALJ failed to adequately explain her finding that plaintiff's physical impairments did not meet or equal Listings 1.02 or 1.04. In contrast, plaintiff notes that the ALJ provided a thorough discussion of the evidence relating to her mental impairments and cited to both medical and non-medical evidence in support of her determination that plaintiff did not meet or medically equal the mental impairment Listings. Absent a similarly thorough analysis, plaintiff maintains that the ALJ's determination regarding whether she meets or medically equals a listed impairment due to her physical impairments is insufficient and requires remand. (Doc. 12 at 10-11).

In support, plaintiff relies on *Risner v. Comm'r of Soc. Sec.*, No. 11-cv-36, 2012 WL 893882 (S.D. Ohio Mar. 15, 2012), where the District Judge overruled the Magistrate Judge's Report & Recommendation and remanded the matter because the ALJ's listing determination was insufficiently explained. In *Risner*, the ALJ did not identify which listing or listings were considered and he provided no explanation or discussion supporting his finding that the plaintiff's impairments did not meet or medically equal a listed impairment. *Risner v. Astrue*, 2012 WL 219539, at *3 (S.D. Ohio Jan. 25, 2012) (Report and Recommendation), *overruled*, 2012 WL 893382. The District Judge held that remand was necessary as the ALJ failed "to complete a required step in the five-step analysis" and reiterated that "[r]equiring a reasoned and

explained conclusion is not merely a formalistic requirement[,]" but is "a necessary component for this Court to ascertain whether the ALJ's decision was supported by substantial evidence. *Risner*, 2012 WL 893882, at *5.

Here, the ALJ identified the two listings she considered (Listings 1.02 and 1.04), parroted their criteria, and asserted that "the medical evidence of record fails to establish" that plaintiff met or equaled them. *See* Tr. 21. The ALJ did not cite to the evidence she considered nor did she explain how the evidence failed to establish that plaintiff met or equaled either Listing 1.02 or 1.04. The ALJ simply stated that the evidence of record did not establish that plaintiff met the criteria of the listings. Without any explanation from the ALJ regarding the evidence she relied on in making her listings determination, the Court is unable to meaningfully review her decision to determine whether it is substantially supported by the record. *See Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Ablewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)). *Cf. Saunders v. Comm'r of Soc. Sec.*, No. 13-cv-118, 2014 WL 533498, at *4 (S.D. Ohio Feb. 11, 2014) (Report and Recommendation), *adopted*, 2014 WL 842952 (S.D. Ohio Mar. 4, 2014) (finding that a minimally articulated listings determination was not reversible error where the ALJ referenced the evidence considered and discussed it in greater detail in other portions of the decision, permitting the Court to discern the basis for the finding).

Accordingly, plaintiff's first assignment of error should be sustained and this matter should be remanded with instructions to the ALJ to provide a more thorough discussion in connection with her finding on Listings 1.02 and 1.04 to enable the Court's review.

2. <u>Whether the ALJ's RFC formulation is supported by substantial evidence</u>.

For her second assignment of error plaintiff argues the ALJ erred in formulating her RFC by: (1) mischaracterizing the functional limitations caused by her urinary incontinence, and (2) improperly rejecting portions of her treating physician's opinion. The Court will address plaintiff's arguments separately.

a. *Urinary Incontinence*

The evidence regarding plaintiff's urinary incontinence is as follows:

At an August 2007 comprehensive exam, plaintiff reported urinary incontinence. (Tr. 390). In February 2008, plaintiff reported to Penny Hahn, M.D., her primary care physician, that she had a chronic history of bladder problems with stress incontinence. (Tr. 353). In April and May 2008, plaintiff reported problems with urinary incontinence to her pain management specialist, Ahsan Usmani, M.D. *See* Tr. 334 (on April 17, 2008, plaintiff reported two episodes of loss of bladder control); Tr. 331 (on May 15, 2008, plaintiff reported that she still had bladder incontinence once or twice a month). Plaintiff's treating gynecologist, Edouard Feghali, M.D., noted in a Physician's Questionnaire completed in November 2009 that plaintiff had urinary incontinence resulting from her back injury. (Tr. 399). Plaintiff again reported urinary incontinence to Dr. Hahn at her January 2010 annual exam. (Tr. 480). On May 2, 2011, Dr. Hahn noted that plaintiff had seen a urologist for her incontinence and that she was planning on undergoing cystometric studies. (Tr. 484).

Plaintiff treated with urologist Marvin Almquist, M.D., in April and May 2011. (Tr. 485-99). Plaintiff first met with Dr. Almquist on April 20, 2011, and reported four to six

episodes of incontinence daily, not preceded by urgency and with a large amount of urine leakage. (Tr. 497). She reported that she had experienced urinary incontinence for eight years. (*Id.*). Urodynamic testing was performed and Dr. Almquist diagnosed plaintiff with hypermobile urethra, stress incontinence, and urge incontinence. (Tr. 491). Test results showed that plaintiff had limited bladder capacity; a moderate amount of leakage when moving from a sitting to standing position; and urge incontinence "consistent with genuine stress urinary incontinence due to hypermobility." (Tr. 492). Dr. Almquist recommended surgery and plaintiff met with him on May 18, 2011 for a preoperative discussion. (Tr. 486-89). As stated below, plaintiff did not undergo the surgery.

At the ALJ hearing, plaintiff testified that she had problems with urinary incontinence since she injured her back in 2007, but that it had worsened in the past few months. She testified that previously it was more controlled and she would only experience leakage while coughing or sneezing and needed to change only once every three hours. Plaintiff testified that she used adult diapers and now had to change them up to twice an hour. Plaintiff explained that the incontinence is worse with activity like bending and walking. Plaintiff testified that she has leaked through her adult diapers before and has ruined furniture and the seat in her van; once, plaintiff left a spot on the chair at her son's doctor's office due to a coughing spasm. Plaintiff testified that she did not undergo surgery for her incontinence because she did not have insurance. (Tr. 43-44, 54-57).

The ALJ's decision contains the following discussion regarding plaintiff's urinary incontinence:

> [Plaintiff] testified that she wears adult diapers and has to change them every hour or two. The medical record indicates that this condition has responded well to treatment. In fact, her treating source reported that the [plaintiff]'s gynecological

9

> problems do not interfere with her activities and she has not been given limitations as a result of her incontinence (Exhibit 8F). However, the undersigned [ALJ] has provided limitations given the [plaintiff]'s history of incontinence and her allegations.

(Tr. 27). The ALJ accommodated plaintiff's urinary condition by requiring work with "a readily accessible bathroom facility." (Tr. 23).

The treating source opinion referenced by the ALJ is that of plaintiff's gynecologist, Dr. Feghali, who completed a Physician Questionnaire on November 5, 2009. Dr. Feghali reported that plaintiff suffered from heavy menstrual bleeding, a history of broken back, and urinary incontinence from her back injury. (Tr. 399). Dr. Feghali further reported that he performed a "D+C"[3] and endometrial ablation on plaintiff and that she had "responded to treatment = no more bleeding." (Tr. 399-400). Dr. Feghali opined that "gynecological problems do not interfere with her activities" and he stated that she had no limitations resulting from her impairments. (Tr. 400).

Plaintiff argues that the ALJ mischaracterized Dr. Feghali's opinion and erred in formulating her RFC by not properly accommodating her urinary incontinence. Plaintiff explains that Dr. Feghali's opinion that plaintiff was not functionally limited related exclusively to the gynecological condition Dr. Feghali treated – plaintiff's heavy menstrual bleeding – and not to plaintiff's urinary incontinence. Plaintiff further asserts that the ALJ failed to address the treatment records from her treating urologist, Dr. Almquist, which, when taken with the other evidence of record, establish that her urinary incontinence is a severe and disabling condition that causes functional limitations not accommodated by the ALJ's RFC. Plaintiff also contends that

---

[3]The term "D+C" refers to dilation and curettage and "is a procedure to scrape and collect the tissue (endometrium) from inside the uterus." See www.nlm.nih.gov/medlineplus/ency/article/002914.htm (last visited March 17, 2014).

the ALJ's RFC requiring that plaintiff work near a readily accessible bathroom is impermissibly vague and otherwise fails to properly accommodate her impairment. Consequently, plaintiff claims the ALJ's RFC formulation is not supported by substantial evidence. (Doc. 12 at 12-16).

In opposition, the Commissioner maintains that the ALJ's RFC formulation adequately accommodates the supported limitations plaintiff experiences due to her urinary incontinence. The Commissioner focuses on the fact that plaintiff's primary reason for stopping working was her back impairment and contends that plaintiff's ability to work for years after first reporting incontinence problems belies her assertion that the impairment is disabling. The Commissioner also maintains that it was proper for the ALJ to rely on Dr. Feghali's opinion that plaintiff is not limited by her urinary incontinence as the doctor specifically identified it as a symptom in his Physician's Questionnaire. (Doc. 17 at 6-7).

The Court finds that the ALJ's RFC formulation fails to adequately accommodate plaintiff's severe urinary incontinence impairment such that remand is required. The ALJ found that plaintiff's urinary incontinence limited her to work where there was "a readily accessible bathroom facility." (Tr. 23). This vague limitation fails to address a variety of factors that necessarily affect plaintiff's RFC. For example, the ALJ did not provide any explanation as to the frequency or duration of plaintiff's bathroom breaks. Plaintiff testified that at times she needs to change her incontinence briefs one to two times per hour. Yet, the ALJ failed to account for plaintiff's need to take such frequent breaks in formulating the RFC or to further develop plaintiff's testimony to determine the length of such a restroom break. The ALJ erred by failing to develop these pertinent facts at the hearing and craft an appropriately

accommodating RFC. *See Hubbard v. Comm'r of Soc. Sec.*, No. 11-11140, 2012 WL 883612, at *7 (E.D. Mich. Feb. 27, 2012) (Report and Recommendation), *adopted*, 2012 WL 858636 (E.D. Mich. Mar. 14, 2012) (reversing and remanding with directions to the ALJ to determine the frequency of plaintiff's unscheduled bathroom breaks and their effect on plaintiff's ability to work); *Green v. Astrue*, No. 3:09-cv-331, 2010 WL 2901765, at *5-6 (E.D. Tenn. July 2, 2010) (Report and Recommendation), *adopted*, 2010 WL 2901762 (E.D. Tenn. July 20, 2010) ("the ALJ's failure to specify precisely how [p]laintiff's need for frequent restroom breaks impacted her ability to work was an error that requires remanding this case.").

The Court therefore recommends that this matter be reversed and remanded with instructions to the ALJ to determine the frequency and duration of plaintiff's required bathroom breaks and the practical work-day limitations resulting therefrom in formulating plaintiff's RFC. Given this recommendation, the Court declines to address whether the ALJ's reliance on Dr. Feghali's opinion in addressing plaintiff's urinary incontinence was erroneous. Nevertheless, on remand, the ALJ should account for all the medical and testimonial evidence regarding plaintiff's urinary incontinence impairment, including the objective findings from plaintiff's urologist, when reformulating plaintiff's RFC.

b. *Dr. Hahn's opinion*

Plaintiff contends that the ALJ's RFC formulation is erroneous as it does not include the sitting, standing, and walking limitations put forth by treating physician, Dr. Hahn. Dr. Hahn completed a Physical Residual Functional Capacity Questionnaire on March 14, 2011, wherein she opined that plaintiff was limited to sitting and standing for 45 minutes at a time; walking for sixty minutes at a time; sitting for two hours in an eight-hour workday; and standing or walking

12

for three hours in an eight-hour workday. (Tr. 466). The ALJ gave some weight to other limitations put forth by Dr. Hahn, but rejected Dr. Hahn's sitting, standing, and walking limitations finding they were "not well supported by the other substantial medical evidence of record." (Tr. 28). Plaintiff argues the ALJ erred by failing to explain what the "other substantial medical evidence" consists of or explain how it is inconsistent with Dr. Hahn's opinion. (Doc. 12 at 16-17).

Plaintiff also argues that the ALJ erred by rejecting Dr. Hahn's opinion that plaintiff's pain would constantly interfere with her attention and concentration such that she is capable of only low stress jobs. (Doc. 12 at 17, citing Tr. 28, 465). The ALJ gave "limited weight" to this portion of Dr. Hahn's opinion, finding that "the level of such interference is unclear, as is the definition of low stress work" and that the other evidence discussed by the ALJ supports the RFC formulation. (Tr. 28).

In opposition, the Commissioner contends that the ALJ properly rejected Dr. Hahn's sitting, standing, and walking limitations as they were not substantiated by objective evidence. (Doc. 17 at 8). The Commissioner further contends that the ALJ's finding was substantially supported by the opinions of the state agency reviewing physicians who opined that plaintiff could stand or walk for six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. (Doc. 17 at 8, citing Tr. 428, 462). Regarding Dr. Hahn's opinion on plaintiff's attention and concentration, the Commissioner asserts that the ALJ took this into account when formulating the RFC by limiting plaintiff to simple, routine, and repetitive tasks. (*Id.*, citing Tr. 23).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by

evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole,* 661 F.3d at 937 (citation omitted). *See also Wilson,* 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole,* 661 F.3d at 937 (citing SSR 96-2p).

The classification of a medical source is a question of law which the Court reviews de novo. *Blakley,* 581 F.3d at 407 (citing *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir.2007)). Any factual findings by the ALJ that bear on the question are accorded substantial deference. *Id.* Pursuant to 20 C.F.R. §§ 404.1502 and 416.902, a physician qualifies as a "treating source" if the physician sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition(s)." *Id.* A physician is a "nontreating source" if the physician has examined the claimant "but does not have, or did not have, an ongoing treatment relationship with" him. *Id.*

In her decision, the ALJ did not refer to Dr. Hahn as a "treating physician" and did not expressly address whether Dr. Hahn's medical opinion was entitled to controlling weight under the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The Court acknowledges that factual findings by the ALJ that bear on the classification of a medical source, if supported by substantial evidence, must be accepted by the Court, even if the Court might reach the opposite conclusion. *Smith*, 482 F.3d at 876 (citing 42 U.S.C. § 405(g)); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir.2006); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir.2007)). In this case, however, the Court is unable to discern how the ALJ classified Dr. Hahn or the basis for the determination. The ALJ did not make specific findings regarding plaintiff's treatment relationship with Dr. Hahn pursuant to 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), such as the nature and frequency of Dr. Hahn's examinations. It is therefore unclear whether the ALJ believed Dr. Hahn was a treating physician or merely an examining source, or if the ALJ would have given greater weight to Dr. Hahn's opinion had she been classified as a treating physician.

In light of these unresolved factual issues, the Court is unable to engage in a meaningful review of the ALJ's decision. The ALJ's reasoning is not "sufficiently specific to make clear" whether the ALJ recognized Dr. Hahn as a treating physician and whether she evaluated her treatment relationship with plaintiff in accordance with the requirements of 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). *See Blakley,* 581 F.3d at 409 (citing SSR 96–2p, 1996 WL 374188, at *5). Accordingly, this matter should be reversed and remanded for further factual development on the appropriate classification of Dr. Hahn's opinion in accordance with the

16

definitions set forth in 20 C.F.R. §§ 404.1502 and 416.902 and for a re-weighing of the opinion in accordance with the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927.

The Court also finds that the ALJ's RFC with respect to plaintiff's limitations in attention and concentration is not substantially supported. Plaintiff argues that the ALJ should have given greater weight to Dr. Hahn's opinion that plaintiff's pain will constantly interfere with her ability to maintain attention and concentration such that she is capable of only low stress work. The ALJ gave "limited weight" to this portion of Dr. Hahn's opinion, finding that it was vague as "the level of such interference was unclear" as was the definition of "low stress" work. (Tr. 28). As stated above, the ALJ's failure to recognize Dr. Hahn's status as plaintiff's treating physician and weigh her opinion accordingly requires reversal. Further, even assuming, *arguendo*, that the ALJ's decision on this point is supported by substantial evidence and that plaintiff has no more than moderate limitations in attention and concentration, remand would still be necessary as the ALJ's RFC fails to accommodate such limitations. *See* Tr. 22. District Courts in this Circuit have held that an RFC limiting a claimant to simple, routine, repetitive work fails to adequately address moderate difficulties with concentration and attention. *See Ball v. Comm'r of Soc. Sec.*, No. 09-cv-684, 2011 WL 765978, at *4 (S.D. Ohio Feb. 25, 2011) (Beckwith, J.). *See also Benton v. Comm'r of Soc. Sec.*, 511 F. Supp.2d 842, 849 (E.D. Mich. 2007) (RFC for simple, routine, repetitive work is not adequate where plaintiff had moderate difficulties with concentration as it remains unclear whether plaintiff will be able to meet quotas, stay alert, or work at a consistent pace); *Candela v. Astrue*, No. 1:10-cv-1603, 2011 WL 3205726, at *10-11 (N.D. Ohio July 28, 2011) (where plaintiff has established moderate concentration difficulties, ALJ must include limitation in formulating the hypothetical question posed to the VE by

17

determining, for example, whether plaintiff would be able to complete a normal work week). Remand is necessary as the ALJ's RFC formulation fails to adequately account for even the moderate concentration and attention limitations found by the ALJ and, consequently, the VE's testimony in response to the hypothetical question posed by the ALJ does not constitute substantial evidence that plaintiff could perform the jobs identified by the VE. On remand, the ALJ should be instructed to: (1) weigh the entirety of Dr. Hahn's opinion as required by 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); (2) formulate an RFC which properly accounts for plaintiff's limitations in attention and concentration consistent with this opinion; and (3) provide a hypothetical question to the VE that accurately portrays plaintiff's impairments as determined by the ALJ after completing steps one and two.

    3. Whether the ALJ erred in assessing plaintiff's credibility.

For her final assignment of error, plaintiff asserts the ALJ erred in assessing her credibility. As stated above, the undersigned recommends that this matter be remanded due to the ALJ's inadequately explained listings determination and her errors in weighing Dr. Hahn's opinion and formulating an RFC. As resolution of these issues on remand may impact the remainder of the ALJ's sequential evaluation, including her assessment of plaintiff's credibility, it is not necessary to address plaintiff's credibility argument. *See Trent v. Astrue,* No. 1:09cv2680, 2011 WL 841529, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's argument had merit, the outcome would be the same, *i.e.*, a remand for further proceedings and not an outright reversal for benefits.

**IV. This matter should be reversed and remanded for further proceedings.**

    In determining whether this matter should be reversed outright for an award of benefits or

remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings with instructions to the ALJ to sufficiently explain her finding that plaintiff does not meet or equal Listing 1.02 or 1.04 to allow this Court to meaningfully review her findings. On remand, the ALJ should also reweigh Dr. Hahn's opinion as required by 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) and reformulate plaintiff's RFC to account for the full effects of her urinary incontinence and to account for plaintiff's substantially supported limitations in concentration, persistence, and pace as stated above.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 4/2/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHELLE SHERRILL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-276
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).